FILED

2019 Dec-09  PM 03:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| DARNELL JOSEPH MCMILLIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:18-cv-00656-RDP-JEO |
| | ) | |
| ANDRE PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff filed a *pro se* complaint seeking monetary damages and injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 1). The plaintiff names Correctional Officer Andre Phillips as the sole defendant. (*Id.* at 1-2). He alleges Phillips used excessive force again him in violation of his Eighth Amendment rights and requests monetary and injunctive relief. (*Id*. at 5, 13-14).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the undersigned recommends Defendant Phillips' motion for summary judgment be granted in part and denied in part.

## I. Procedural History

On January 14, 2019, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to the named defendant and directing the defendant to file a Special Report addressing the plaintiff's factual allegations.  (Doc. 6).  The undersigned advised the defendant that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id.*).

On May 31, 2019, the defendant filed a Special Report, supplemented by an affidavit and other evidence.  (Doc. 16).  On June 26, 2019, the undersigned notified the parties that the court would construe the Special Report as a motion for summary judgment and notified the plaintiff that he had twenty-one (21) days to respond to the motion for summary judgment by filing affidavits or other material.  (Doc. 19). The undersigned also advised the plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  After several extensions of time, the plaintiff filed a response on October 15, 2019.  (Doc. 27).  This matter is now before the court on the defendant's motion for summary judgment and the response thereto.

## II. Standard of Review

Because the court has construed the defendant's Special Report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the

burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

### III. Summary Judgment Facts[1]

On January 8, 2018, at about 12:15 p.m., the plaintiff left his cell in X-Unit to attend a class. (Doc. 1 at 13). Correctional Officer Andre Phillips asked the plaintiff where his jumpsuit was. (*Id*.). The plaintiff responded that he did not have a jumpsuit. (*Id*.). Officer Phillips directed the plaintiff to return to his cell and the plaintiff complied. (*Id*.). About five minutes later, Officer Phillips came to the plaintiff's cell, opened the door, and began cursing at the plaintiff. (*Id*.). When Phillips insisted that he had given the plaintiff a jumpsuit, the plaintiff responded

---

[1]    These facts are undisputed or, if disputed, viewed in a light most favorable to the non-moving party.  Factual disputes are addressed in footnote form.

that he did not have a jumpsuit because he should have been assigned to segregation, not X-Unit. (*Id.*). Officer Phillips accused the plaintiff of lying about the jumpsuit. (*Id.*). During this verbal exchange, the plaintiff was lying on his bed and posed no threat to Phillips. (Doc. 1 at 13; doc. 27, McMillian Aff. at 2-3).

Officer Snelson entered the plaintiff's cell and Officer Phillips sprayed the plaintiff with mace on the left side of his face. (Doc. 1 at 13). Snelson then grabbed the plaintiff and turned him around to handcuff him. (*Id.*). As Snelson handcuffed the plaintiff, Officer Phillips used his metal baton to strike the plaintiff from behind on his left leg, the back of his left arm, and the back of his head. (Doc. 1 at 13; doc. 27, McMillian Aff. at 3). The plaintiff "pass[ed] out for several seconds." (*Id.*). Phillips was about to strike the plaintiff again when Snelson told him to stop. (*Id.*). The plaintiff claims, "I gave Officer Phillips no reason to use any force[.] I never got up from my bed [until] Officer Snelson got me up [and] intervened after I was maced."[2] (Doc. 27, McMillian Aff. at 3).

---

[2]     Defendant Phillips states that on the day in question, he gave the plaintiff direct orders to get dressed and attend class. (Doc. 16-1, Phillips Aff. at 1). Phillips claims the plaintiff did not obey his orders. (*Id.*). Phillips alleges he and Officer Snelson approached the plaintiff's cell and the plaintiff threatened them and became aggressive. (*Id.*). Phillips states he sprayed the plaintiff with mace and "gave a couple of baton strikes to gain control of him." (*Id.*). Phillips states Officer Snelson handcuffed the plaintiff and escorted him to the infirmary. (*Id.*).

    Although the defendants have submitted Snelson's statement which was taken after the incident, the statement does not appear to be sworn. (Doc. 16-5 at 19).

The plaintiff was escorted to the infirmary and placed in a shower to rinse the mace from his eyes. (Doc. 1 at 13). A nurse completed a body chart on the plaintiff and noted an open laceration to the back of his head, a bruise on his lower left forearm, and a bruise on his leg.  (Doc. 16-3 at 47).  The nurse further noted that the plaintiff's forearm was possibly fractured.  (*Id*.).  The nurse stated that prison medical staff could not treat the plaintiff's injuries and that he needed to be transferred to UAB Hospital for medical treatment.  (Doc. 1 at 13-14).

The plaintiff was escorted to Warden Leon Bolling's office where Bolling, Warden Errol Pickens, Captain Jeffery Baldwin, and Captain Caldwell were present. (Doc. 1 at 14).  The officers asked the plaintiff what happened. (*Id*.). The plaintiff responded that Phillips had assaulted him "over a jumpsuit."  (*Id*.).  The plaintiff claims the officers were more concerned with his past disciplinary charges than his injuries. (*Id*.).  The plaintiff was escorted back to the infirmary where he awaited transport to UAB. (*Id*.). Lieutenant Thrasher took pictures of the plaintiff and the plaintiff wrote a statement concerning Phillips' actions.[3]  (*Id*.).

At UAB, the plaintiff underwent x-rays and was diagnosed with a severely bruised arm. (Doc. 1 at 14).  The plaintiff received several staples to the back of his

---

[3]    Photographs taken of the plaintiff after the incident do not definitively show what injuries the plaintiff sustained.  (Doc. 16-5 at 7-18).

head and was prescribed pain medication. (Doc. 1 at 14; doc. 16-4 at 7).  He returned to the prison and was assigned a cell by himself. [4]  (Doc. 1 at 14).

Officer Phillips charged the plaintiff with failing to obey a direct order for refusing to put on his jumpsuit.  (Doc. 1 at 14; doc. 27 at 7-8).  On January 29, 2018, a disciplinary hearing was held and the plaintiff was found not guilty.  (*Id.*). Specifically, Phillips testified that other officers informed him later that the plaintiff was never issued a jumpsuit.  (*Id.*).  Officer Phillips continues to work in X-Unit.[5] (Doc. 1 at 16).

---

[4]   The Incident Report states that after Officer Phillips ordered the plaintiff to put on his jumpsuit and get ready for class, the plaintiff became very hostile and belligerent. (Doc. 16-5 at 1).  The Incident Report further states:

> Inmate McMillian stood up off the bottom rack [and] got into a combative stance with both fist[s] clenched[,] walking toward Officer Phillips.  Officer Phillips raised his left hand up and instructed inmate McMillian to stop and get back [but] McMillian ignored Officer Phillips['] verbal command to stop and continued walking toward Officer Phillips.  Officer Phillips deployed a one 1 second burst of Sabre Red into the facial area of inmate McMillian.  Inmate McMillian continued to disobey orders and became actively aggressive and combative toward Officer Phillips.  Officer Phillips deployed several baton strikes to inmate McMillian[']s extremities.  Inmate McMillian fell to the floor and struck his head on the top bed of the cell.  Officer Snelson entered into the cell and placed inmate McMillian into handcuffs.

(*Id.*).

[5]   On February 14, 2018, Captain Jeffery Baldwin completed a Use of Force Investigative Report, finding that the force Phillips used against the plaintiff "was necessary and justified due to inmate McMillian being actively aggressive and combative with Officer Phillips."  (Doc. 16-5 at 20). Baldwin further found Phillips used the appropriate amount of force necessary to gain control and compliance of the plaintiff as he exhibited combative and aggressive behavior.  (*Id.*).

## IV. Analysis

### A. Official Capacity Claims

To the extent the plaintiff's Eighth Amendment excessive force claim is brought against Defendant Phillips in his official capacity for money damages, the plaintiff's claim is due to be dismissed under the doctrine of sovereign immunity.  It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, Eleventh Amendment immunity also bars claims for money damages brought against officials and employees of state entities sued in their official capacities.  *Id.* at 101-02.

Based on the foregoing, Defendant Phillips' motion for summary judgment on the plaintiff's excessive force claim against him in his official capacity for monetary relief is due to be granted.

### B. Excessive Force

To the extent Defendant Phillips also moves for summary judgment on the plaintiff's Eighth Amendment excessive force claim against him in his individual capacity, the motion is due to be denied.

The plaintiff's excessive force allegations against Defendant Phillips must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999). In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and

(5) the extent of the injury suffered by the inmate.  *Whitley v. Albers*, 475 U.S. at

321.

      In applying the foregoing factors to the facts of a particular case, the Supreme

Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives
> rise to a federal cause of action.  The Eighth Amendment's prohibition
> of "cruel and unusual" punishments necessarily excludes from
> constitutional recognition *de minimis* uses of physical force, provided
> that the use of force is not of a sort "'repugnant to the conscience of
> mankind.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

      To create a genuine issue of material fact, the plaintiff must come forward

with evidence from which a reasonable inference can be drawn that the defendant

acted maliciously and sadistically.  Generally, courts "do not second-guess prison

officials on matters that they are better equipped to handle under the exigencies of

an internal disturbance."   *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir.

1998).

      The plaintiff claims that Defendant Phillips maced him in his cell even though

the plaintiff was lying on his bunk and not posing a threat to Phillips. (Doc. 1 at 13;

doc. 27, McMillian Aff. at 2-3).  The plaintiff further claims that as Officer Snelson

was placing handcuffs on him, Phillips hit him from behind on his leg, arm, and head

with a metal baton.  (*Id*.).  The plaintiff asserts that Phillips was about to hit him

again, but Snelson told him to stop.  (Doc. 1 at 13).  The plaintiff contends he did

not give Phillips any reason to use force and never moved from his bed until Snelson stood him up to handcuff him.  (Doc. 27, McMillian Aff. at 3).

Construing the facts in a light most favorable to the plaintiff, Defendant Phillips intentionally and maliciously attacked the plaintiff by spraying him with mace and hitting the plaintiff on his leg, forearm, and back of his head with a metal baton.  Moreover, no force was needed to restore or maintain discipline at the time since the plaintiff was not posing a threat to Phillips or other officers.

On the other hand, Defendant Phillips states in his affidavit that the plaintiff made threats and became aggressive.  (Doc. 16-1, Phillips Aff. at 1).  Phillips claims he sprayed the plaintiff with mace and gave him "a couple of baton strikes to gain control of him."  (*Id.*).  Phillips states thereafter, Officer Snelson handcuffed the plaintiff and escorted him to the infirmary.[6]  (*Id.*).

On February 14, 2018, Captain Baldwin completed a Use of Force Investigative Report, finding that the force Defendant Phillips used against the plaintiff "was necessary and justified due to inmate McMillian being actively

---

[6]     The Incident Report indicates that after Phillips instructed the plaintiff to get dressed, the plaintiff rose from his bunk, stood in "a combative stance with both fist[s] clenched," and walked towards Phillips.  (Doc. 16-5 at 1).  According to the Incident Report, Phillips deployed a one second burst of Sabre Red to the plaintiff's facial area and after the plaintiff continued to disobey orders and act aggressively, Phillips deployed several baton strikes to the plaintiff's extremities which caused the plaintiff to fall and strike his head on the top bunk.  (*Id.*).

Defendant Phillips does not specifically state in his affidavit that the plaintiff got into a combative stance, with fists clenched, and walked towards him.  (Doc. 16-1, Phillips Aff. at 1).  Neither does Phillips state in his affidavit that after he hit the plaintiff with his baton, the plaintiff fell, striking his head on the top bunk.  (*Id.*).

aggressive and combative with Officer Phillips." (Doc. 16-5 at 20). Baldwin further found Phillips used the appropriate amount of force necessary to gain control and compliance of the plaintiff as he exhibited combative and aggressive behavior. (*Id.*).

It is well established that assessing the credibility of the allegations made by the plaintiff or a defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996). The facts presented by the parties show that a genuine dispute exists between the plaintiff's and the defendant's version of the facts in connection with the events that took place on January 8, 2018, and whether Defendant Phillips used excessive force against the plaintiff. Therefore, Defendant Phillips' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim is due to be denied.

## C. Qualified Immunity

Defendant Phillips argues he is entitled to qualified immunity with regard to the plaintiff's excessive force claim. (Doc. 16 at 9-10). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citation omitted). To obtain qualified

immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity in not appropriate." *Id*. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

There is no dispute that Defendant Phillips was acting within the scope of his discretionary authority when he allegedly used excessive force against the plaintiff on January 8, 2018. Because there is a question of fact concerning whether Defendant Phillips used excessive force against the plaintiff, he is not entitled to qualified immunity on the plaintiff's excessive force claim against him. Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a . . . motion for summary judgment. If he has done so, that is the end of the inquiry.

13

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).

Since the plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment claim against Defendant Phillips with regard to his alleged use of excessive force, Phillips' motion for summary judgment on the basis of qualified immunity is due to be denied.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. Defendant Phillips' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim against him in his official capacity for monetary relief be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**;

2. Defendant Phillips' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim against him in his individual capacity be **DENIED**; and

3. Defendant Phillips' motion for summary judgment on the plaintiff's Eighth Amendment excessive force claims against him in his individual capacity on the basis of qualified immunity be **DENIED**.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by

law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DATED** this 9th day of December, 2019.

JOHN E. OTT
Chief United States Magistrate Judge